UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

THE MERIT GROUP, LLC

                        Plaintiff

- against -

                                                                             08 CV 3496 (JES)

SINT MAARTEN INTERNATIONAL
TELECOMMUNICATIONS SERVICES, NV
and THE TELEM GROUP, NV,

                        Defendants.

------------------------------------------------------------X

## **DECLARATION OF CURTIS T. WHITE**

I, Curtis T. White, declare as follows:

      1.      I am over the age of 18, of sound mind, and capable of giving testimony herein. I make this Declaration based on my own personal knowledge of the facts that are stated herein.

      2.      I am an attorney licensed to practice law in the District of Columbia, specializing in domestic and international telecommunications, private licensing, and corporate finance. Since 1989, I have been the principal of the Law Offices of Curtis T. White in Washington, D.C. I received my J.D. from Georgetown University Law Center in 1971.

      3.      In August 2006 I acted as U.S. counsel to Sint Maarten International Telecommunication Services N.V. ("SMITCOMS") and Telem, N.V. ("Defendants"), corporations incorporated in the Netherlands Antilles, located in the Island Territory of Sint Maarten, N.V., in connection with entering into a Financial Services Agreement ("FSA") on August 31, 2006, with The Merit Group, LLC, ("Merit"), a company located in the State of New York.

4. I make the following statements based on my own personal knowledge, including my review of documents, referenced herein.

5. I have reviewed the Affidavits of Harvey Bloch and Leonard N. Flamm, both dated May 7, 2008, made in connection with Merit's motion to remand the above-captioned action to State Court in New York.

6. I respond to certain of the factual assertions made by Mr. Bloch concerning paragraph 10 of the FSA, the Dispute Resolution clause, in paragraphs 21-33 of his Affidavit. I do not address the legal arguments made by Messrs. Bloch or Flamm concerning this provision.

7. To my knowledge and understanding, based on my involvement in this matter, including my communications with Merit's counsel, Thomas Mancuso, no discussions or negotiations were held between Defendants and Merit, orally or in writing, concerning para. 10 of the FSA, or any of the issues that Mr. Bloch raises concerning this paragraph. I note that although there were extensive email communications between the parties, and numerous drafts of the FSA were exchanged, Mr. Bloch does not identify any writing in which these matters were assertedly discussed, and he does not identify any persons who participated in such discussions or negotiations, or when or where such discussions supposedly occurred.

8. In addition, I note that if Merit in fact had the concerns at that time that Mr. Bloch now asserts in his Affidavit, and if Merit had in fact intended to communicate those concerns to the Defendants, it would have been a very simple matter to address those concerns directly and clearly, such as by expressly proposing that the parties explicitly agree, for example : 1) to a

jury trial; 2) to exclude the federal courts as a forum; and 3) to waive their right to remove a state court action to federal court.

9. The Bloch Affidavit, in paragraph 31, states that Defendants drafted para. 10 of the FSA. This is untrue. The first draft of the FSA was prepared by Merit's counsel, Thomas Mancuso, and circulated to me and others on August 17, 2006. Although many parts of the FSA went through substantial revision in several drafts between August 17 and August 31, Merit's proposed language in para. 10 of the August 17 draft was never altered, and is identical to the August 31 executed FSA. A true and correct copy of my red-lined response sent on August 18, 2006 to the August 17 draft sent to me by Merit's counsel is annexed hereto as Exhibit 1.

10. To the extent that Mr. Bloch may be suggesting that Mr. Mancuso acted as Defendants' counsel in drafting the FSA, that is untrue. Only after the FSA was executed did Defendants retain Mr. Mancuso, at, as I understand, the recommendation of Merit, as special disclosure counsel in connection with financing proposals. Annexed hereto as Exhibit 2 is a true and correct copy of emails between me and Mr. Mancuso between August 17, 2006 (when he first circulated a draft of the FSA, and showing me emailing him my red-lined response on August 18) and August 24, which shows that Mr. Mancuso represented Merit, and I represented Defendants in connection with negotiating the FSA (relevant portions of the emails have been marked for the Court's convenience).

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated this 29th day of May, 2008
Washington, D.C.

_____
CURTIS T. WHITE

3

**EXHIBIT 1**

<u>FINANCIAL SERVICES AGREEMENT</u>

THIS FINANCIAL SERVICES AGREEMENT ("Agreement") is made and entered into as of the date indicated below between Sint Maarten International Telecommunications Services, NV ("SMITCOMS), with its principal place of business located at Falcon Drive #3, Harbour View, Phillipsburg, Sint Maarten, NA and TelEm ("TelEm"), with its principal place of business located at J.P. Craane Cruise Terminal Bldg., 2nd Floor – Yrausquin Blvd., Pointe Blanche, Sint Maarten, NA (hereinafter collectively referred to as "The Company Group")

and

The Merit Group, LLC, with its principal place of business located at 575 Lexington Avenue, Suite 400, New York, New York, 10022 USA (hereinafter referred to alternatively as "Merit" or "Consultant").

<u>RECITALS</u>

WHEREAS, SMITCOMS is expanding its fiber optic submarine cable network that is operating pursuant to licenses and authorizations issued by the Federal Communications Commission (USA), known as the SMPR-1 cable network and licensed pursuant to FCC File No. SCL-LIC 20031209-00033, ITC-214-20040128-00071;

WHEREAS, TelEm is expanding product offerings for and services to its customers;

WHEREAS, SMITCOMS and TelEm are affiliated in that each is 100% owned by the Government of the Island Territory of Sint Maarten, Netherlands Antilles, and have joined together under this Agreement for the purpose of increasing the possibility of securing desired financing;

WHERAS, The Company Group has engaged in conversations with The Merit Group in connection with a possible financing involving CITIBANK GROUP, New York and Trinidad;

WHEREAS, The Company Group is desirous of retaining the expertise of The Merit Group to secure the contemplated financing in connection with said CITIBANK;

WHEREAS, The Merit Group has expertise in providing such services in the area of finance and is desirous of providing assistance to as described herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree and set forth as follows:

Financial Services Agreement Between
The Company Group and The Merit Group

-2-

1. **Definitions.** In addition to the terms defined elsewhere in this Agreement, the following terms shall have the meanings hereinafter indicated:

"Affiliate" means with respect to any person, any other person which, directly or indirectly, controls or is controlled by or is under common control with such person, whether by ownership of voting securities, by contract or otherwise.

"Closing" means the satisfaction of all conditions precedent resulting in the consummation of financing as approved by The Company Group.

"Party" means The Company Group (SMITCOMS and TelEm) or successors or assigns and The Merit Group.

"Package or Packaging" means the financial documents and related information that is to be prepared by The Merit Group for presentation to CITIBANK GROUP, New York and Trinidad during the term of this Agreement.

"Project" means all activities and enterprises for which The Company Group may request financial assistance from [or as to which assistance is provided by] The Merit Group in connection with possible financing from said CITIBANK GROUP.

2. **Scope of Services.** The Consultant shall devise and recommend a strategy for obtaining Adequate Financing ("Financing Plan" or "Financing") under the Project, which would include the identification of governmental agencies, private entities, and financial institutions whose programmatic or financial participation could lead to its successful implementation of the financing desired by The Company Group as it may relate to Project or said CITIBANK. Adequate Financing under this Agreement shall mean any loans or series of loans in the aggregate principal loan amount of approximately Seventy Five Million ($75 million) dollars, which shall be subject to final sizing, and otherwise consented to by The Company Group. To achieve such aim The Merit Group shall deliver the following Package or Packaging in connection with the CITIBANK Project:

(a) Identify possible sources for providing debt financing for the Project for Projects or credit enhancement with respect to debt financing, including but not limited to involving said CITIBANK (including banks, mutual funds and other financial institutions) that may be involved in the contemplated financing. to provide direct loans, lines of credit or letters of credit for such financings.

(b) Assist in the preparation of and participate with The Company Group in the presentation of information (including general background information and specific financial plans) to said CITIGROUP or, as may be necessary, with respect to the Project of the Company Group to rating agencies if enhancement or other entities including, but not limited to, insurance companies, banks and other lending institutions.

Financial Services Agreement Between
The Company Group and The Merit Group

-3-

(c) Advise The Company Group during negotiations with funding sources related to the CITIBANK Project by critiquing and evaluating Term Sheets and investment proposals received by The Company Group ~~from potential Lenders~~ as may be ~~required~~ necessary to consummate one or more financing transactions acceptable to The Company Group.

(d) Work cooperatively with other third party consultants and advisors engaged by The Company Group to prepare valuation analyses, financial models, presentation materials and other reports or supporting documentation required to facilitate discussions and deliberations of the Project with prospective investors, strategic partners, The Company Group, their respective Boards of Directors or other third parties.

(e) Upon approval of a Financing Plan, assist The Company Group in its implementation and execution of said Financing Plan which ~~for example~~ includes, though is not necessarily limited to assisting The Company Group in negotiations to obtain support ~~and~~/or approval of the appropriate government agencies, private agencies, and financial institutions and ~~helping~~ assisting in the preparation of documentation that may be necessary to consummate funding under the Project.

Nothing contained herein shall be construed to require or otherwise authorize the Consultant, and The Company Group agrees, that the Consultant is neither understood nor expected to undertake any of the following: (i) to purchase from The Company Group or arrange for the purchase of any security, (ii) to sell any security for The Company Group or otherwise act in connection with the distribution of any other security, or to engage in the business of effecting a transaction in any security, (iii) to participate or have a participation in the direct or indirect underwriting or any such undertaking, (iv) to effect transactions in any securities of either entity in the Company Group for the account of others, or (v) to guarantee or serve as a guaranty of any security.

3. **Standard of Performance.** The Consultant shall apply its best efforts toward the achievement of the objectives defined in this Agreement with respect to the Project. The Company Group acknowledges that the Consultant cannot guarantee success with respect to ~~the~~ CITIBANK ~~accomplishment~~ the Financing Plan or any of elements thereof.

4. **Fee Compensation.** As compensation to the Consultant, The Company Group shall pay the Consultant as follows:

(a) In connection with the Consultant services described herein involving the Project, and for any Transaction ("Transaction") involving The Company Group for which Consultant believes in good faith it will be able to obtain Financing, ~~and that has asserted written claim upon and noticed GROUP OF COMPANIES of such claim,~~ Consultant ~~will~~ shall Package or have Packaged the Transaction and prepare or have prepared a Term Sheet ("Term Sheet") for that Transaction that (a) sets forth the terms under which ~~such~~ Adequate Financing, will be provided, and (b) will be agreed to by Consultant and The Company Group by evidence of their execution of said Term Sheet.

Financial Services Agreement Between
The Company Group and The Merit Group

-4-

The Company Group shall pay to Consultant a Compensation Fee as follows: A flat fee of three (3%) of the aggregate Adequate Financing as approved and closed on by The Company Group. ame ("Term Sheet") GROUP OF COMPANIES will pay Consultant as follows, two percent (2%) for providing Packaging and three percent (3%) for providing an agreed upon Term Sheet, of the original outstanding principal balance of Financing provided, through Consultant's efforts, to GROUP OF COMPANIES in accordance with the terms of the Term Sheet for such Financing (the "Consulting Fee" or "Fee"). Said Fee shall be paid only when the Transaction is closed. In the event a line of credit is obtained, the Fee shall be payable when at closing with respect to the maximum amount available under such line of credit, whether or not drawn at closing upon, has been made available to The Company Group.

(b) The Consulting Fee with respect to any Financing shall be paid in the full amount on the day of the closing of such Financing and will be due and owing only if the Financing is approved by The Company Group and implemented, and that such closing occurs. The Compensation Consulting Fee shall be paid from closing proceeds. In the event a however, if the terms of any loan prohibit or limit the use of proceeds or otherwise forbids the use of proceeds to Pay Compensation or Consulting Fees, the said to be used for this purpose then the Consulting Compensation Fee shall be paid by The Company Group from its general funds.

(c) The Company Group shall cause that the Consulting Compensation Fee to be paid directly to the Consultant by wire transfer and shall issue the necessary instructions and authorizations to this effect necessary to effectuate said transfer.

(d) Any amounts owed to the Consultant by The Company Group under this Agreement shall automatically bear interest at the rate of five (5%) percent over Prime from the date such amounts become due and payable. when they are payable up to the date of their effective settlements at the rate of 5% over Prime.

(e) In the event The Company Group elects shall determine to effect a Transaction involving securities with respect to the any Project for which the Consultant has provided any services or provided any advice with respect to the terms, conditions or requirements of lenders that are incorporated into the terms of any such transaction, then the Consultant shall be entitled to the full amount of its Consulting Compensation Fee. The Parties agree that this provision shall be subject to timing and duration provisions set out under this Agreement, including paragraph 5, below.

**5. Duration.** This Agreement shall terminate on January 1, 2007; provided that, at the end of such term, or at the end of any subsequent renewal term, this Agreement shall automatically be extended for an additional six-month period unless not less than 30 days notice of termination shall be given by any Party to the other; and provided further that, in the event any Potential Lender involved in the CITIBANK Project provides all or any part of the financing for any Project (as a lender, an underwriter, a private placement agent, an insurer, a financial adviser, a line of credit provider, a letter of credit

Financial Services Agreement Between
The Company Group and The Merit Group

-5-

provider, a liquidity provider, a participant in any such financing, or in any similar capacity) at any time within one year of the termination date of the Agreement, the Consultant shall be entitled to payment of the Fee notwithstanding any termination of this Agreement. For purposes of this Agreement, "Potential Lender" shall mean any lender, insurer, line of credit provider, letter of credit provider, liquidity provider, or person in any similar capacity, or any Affiliate or assign thereof or successor thereto, who is introduced by the Consultant to The Company Group or any representative of any government or agency thereof who is identified by the Consultant to The Company Group as a source of credit enhancement or mortgage insurance, or who is identified by a Potential Lender under the CITIBANK Project as defined herein to The Company Group. Any person identified in writing by Merit as a Potential Lender will be considered as such without additional action, but a failure to identify a Party in writing shall not exclude such Party from being considered a Potential Lender. The Parties hereto acknowledge and agree that the following (and all their successors, assigns and Affiliates) is a "Potential Lender" under the Project: CITIBANK GROUP, New York and Trinidad. ~~(such list not being intended to be the only Potential Lenders at any time): (a.) CITIBANK GROUP, New York and Trinidad.~~

6. **Full Control.** The Company Group shall not in any way be obliged to accept any commitment, financial or otherwise, proposed by the Consultant and the Consultant shall not have the authority to accept any commitment or enter into any contract on behalf of The Company except as may be expressly approved in writing by The Company Group.

7. **Independent Contractor Relationship.** Nothing contained in this Agreement shall be construed to constitute the Consultant as the partner or employee of The Company Group. Neither Party has any authority to bind the other in any respect. Each Party is and shall remain an independent contractor, responsible only for its own actions.

8. **Termination.**

(a) The Consultant engagement under this Agreement may be terminated by The Company Group at any time by 30 days prior written notice to the Consultant without liability or continuing obligation to the Consultant except for any rights acquired by the Consultant prior to such termination or for compensation and for the provisions relating to indemnity, confidentiality and resolution of disputes and any other rights which provide by the terms hereof that they shall survive any termination.

(b) In case of termination of the Consultant engagement by The Company Group, the Consultant will be entitled to all compensation as provided for in this Agreement if any Closing for the financing occurs within a period of 12 months following the date of termination, from any of the different sources of financing, insurance and guarantees previously recommended or identified by the Consultant to The Company Group. This clause shall not be applicable in the event that The Company Group acquires financing from the identified or recommended sources of financing involved in the CITIGROUP Project ~~insurance and guarantees by the Consultant~~, based on a Term Sheet that is ~~not~~ (???????) measurably

**Comment [MP1]:** The Merit Group likely did not intend this to read as originally written. It accordingly has been modified to read as we believe it was intended. However, it can be discussed during the follow-up telecon.

Financial Services Agreement Between
The Company Group and The Merit Group

-6-

different to the financing terms previously rejected by The Company Group, which resulted in the termination of the agreement with the Consultant.

     **9.**  **Entire Agreement.**  This Agreement sets out the entire agreement and understanding between the Company Group and the Consultant with respect to the Services to be provided by the Consultant in this Agreement and supersedes and cancels any prior communications, understandings and agreements, both written and oral, between the Parties. This Agreement cannot be amended or otherwise modified except by an instrument in writing signed on behalf of each of the Parties hereto. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of The Company Group and the Consultant.

     **10.**  **Dispute Resolution.**  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, U.S.A. The Parties hereby irrevocably submit to the jurisdiction of the courts of the State of New York in connection with any dispute related to or under this Agreement of the financing. The Parties further agree that the substantially prevailing Party in any litigation shall be entitled to recover fully its attorney fees and costs, including investigative costs, incurred (a) prior to litigation, if related to the litigation or to an effort to investigate and negotiate a solution to the dispute; (b) in litigation, including expenses and costs of appeal; and (c) in post-judgment activity, including the expenses and costs of collection.

     **11.**  **Notices.**  Any notice required under this Agreement shall be in writing and deemed given and effective upon delivery if sent by personal delivery, express service or via facsimile transmission, or five days after posting if sent by certified United States Mail, return receipt requested, with postage pre-paid and addressed as follows:

    The Company Group

    Managing Director
    SMITCOMS, NV
    Falcon Drive, No. 3
    Harbour View
    Phillipsburg
    Sint Maarten, Netherlands Antilles

    The Merit Group

    President
    The Merit Group
    575 Lexington Avenue
    Suite 400
    New York, NY 10022

Financial Services Agreement Between
The Company Group and The Merit Group

12. **No Third Party Beneficiaries.** Nothing in this Agreement and all documentation related hereto is intended to or shall create any third-party beneficiaries, and neither Party shall make any representations to the contrary.

13. **Paragraph Captions and Construction.** The paragraph captions (or headings) in this Agreement are strictly for convenience and shall not be considered in interpreting this Agreement, or as amplifying or limiting any of its content. Words in this Agreement that import the singular connotation shall be interpreted as plural, and words that import the plural connotation shall be interpreted as singular, as the Parties hereto or objects referred to may so require.

14. **Severability and Waiver.** If any of the provisions of this Agreement is or becomes illegal, unenforceable, or invalid (in whole on in part for any reason), the remainder of this Agreement shall remain in full force and effect without being impaired or invalidated in any way. Neither Party's failure to insist upon strict performance of any provision of this Agreement shall be construed as a waiver of any of its rights hereunder.

15. **Non-Assignability.** This Agreement may not be assigned without prior written consent of The Company Group.

16. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which is an original and all of which together evidence the same Agreement.

[LEFT INTENTIONALLY BLANK]

Financial Services Agreement Between
The Company Group and The Merit Group

-8-

WITNESS WHEREOF, the Parties hereto, ~~have entered into this Amendment~~ and in confirmation of their consent to the terms and conditions contained in this Agreement and intending to be legally bound hereby, have executed this Agreement in their duly authorized respective capacities **effective as of the date set forth above.**

**The Company Group**

SMITCOMS, NV

By: _____

Name: _____

Title: _____


TelEm

By: _____

Name: _____

Title: _____

and

**The Merit Group, LLC**

By: _____

Name: _____

Title: _____

**EXHIBIT 2**

From: Thomas J. Mancuso [mailto:tjmancuso@HSWMLAW.COM]
Sent: Thursday, August 24, 2006 2:22 PM
To: Curtis White
Cc: Alfred Salazar; Harvey Bloch
Subject: RE: Financial Services Agreement

Curtis: We appreciate your attention to this matter.

TJ

---

From: Curtis White [mailto:cwhite@acg-cos.com]
Sent: Thursday, August 24, 2006 11:59 AM
To: Thomas J. Mancuso
Subject: FW: Financial Services Agreement

TJ

Still waiting for TelEm, but they are being nudged along by SMITCOMS. I'll circle back as soon as I receive confirmation.

Curtis

-----Original Message-----
From: Curtis K. Haynes [mailto:ckhaynes@smitcoms.com]
Sent: Thursday, August 24, 2006 1:57 PM
To: Curtis White
Cc: Helma Etnel; Edward Benjamin; Andrea Barbarin
Subject: RE: Financial Services Agreement
Helma Etnel and Edward Benjamin please respond.
C K Haynes

---

From: Curtis White [mailto:cwhite@acg-cos.com]
Sent: Thursday, August 24, 2006 9:02 AM
To: Curtis K. Haynes
Cc: Helma Etnel; Edward Benjamin; Andrea Barbarin
Subject: RE: Financial Services Agreement
Morning, All

I indicated to T. J. Mancuso (counsel for The Merit Group) that I would get back to him with approval from TelEm re the contemplated joint financing involving Merit. Accordingly, and to the extent possible, I am asking that you confirm the contract (as presented in final draft) is acceptable to TelEm or, alternatively, give me a buzz if we need to discuss. Thanks much and regards.

Curtis White
(202)537-2999 (v - direct)
LOCTW

-----Original Message-----
From: Curtis White
Sent: Wednesday, August 23, 2006 11:27 AM
To: 'Curtis K. Haynes'
Cc: Helma Etnel; Edward Benjamin
Subject: FW: Financial Services Agreement

-----Original Message-----
From: Curtis White
Sent: Wednesday, August 23, 2006 11:26 AM
To: 'Thomas J. Mancuso'
Cc: Andrea Barbarin
Subject: RE: Financial Services Agreement
Morning, TJ

   Circling back with minor edits. SMITCOMS has signed off, and we will get back to you re TelEm. Regards.

Curtis
-----Original Message-----
From: Thomas J. Mancuso [mailto:tjmancuso@HSWMLAW.COM]
Sent: Tuesday, August 22, 2006 5:08 PM
To: Curtis White
Cc: Andrea Barbarin; Alfred Salazar; Harvey Bloch
Subject: RE: Services Agreement
Please see attached.

TJ


From: Curtis White [mailto:cwhite@acg-cos.com]
Sent: Tuesday, August 22, 2006 1:52 PM
To: Thomas J. Mancuso
Cc: Andrea Barbarin
Subject: RE: Services Agreement

Afternoon, TJ

   Our client ended up in a Board mtg, but I understand yr client communicated directly with them earlier today the fact they they were OK with the changes. I remain confident that the modifications you proposed should not be an issue. Hence, in an effort to move things forward, I recommend that you insert the language on joint and several liability as you deem as appropriate, and get that over to us. We will then prepare a revised (final) draft for your review and approval by our respective clients. Regards.

Curtis
-----Original Message-----
From: Curtis White
Sent: Tuesday, August 22, 2006 9:06 AM
To: 'Thomas J. Mancuso'

Cc: Andrea Barbarin
Subject: RE: Services Agreement
Morning, TJ

    Thanks for your response. I'll caucus with our client later today and get back to you. My preliminary thought, however, is that your suggested modification/addition should not create a problem. We'll talk later today or tomorrow AM. Regards.

Curtis
-----Original Message-----
From: Thomas J. Mancuso [mailto:tjmancuso@HSWMLAW.COM]
Sent: Monday, August 21, 2006 7:36 PM
To: Curtis White
Cc: Alfred Salazar; Harvey Bloch
Subject: RE: Services Agreement
Curtis:

A couple of things.

1.     I think paragraph 5 and paragraph 8 are a little inconsistent. I think 8 can be eliminated.
2.     I'd like the obligations of SMITCOMS and TelEm to be joint and several. I don't think it is intended that they are only obligated if they end up as a joint venture or consolidated.

Let me know your thoughts. Generally the agreement is OK.

TJ

---

From: Curtis White [mailto:cwhite@acg-cos.com]
Sent: Friday, August 18, 2006 10:53 AM
To: Thomas J. Mancuso
Cc: Andrea Barbarin
Subject: RE: Services Agreement

Afternoon (Top of the Morning), TJ

    Attached is a draft of the Financial Services Agreement with our comments. In our telecon yesterday with our client, it was explained that they would like to limit the focus of the Agreement to the existing Term Sheet and Institution at the table, namely CITIBANK. For that reason, we tailored the document in an effort to conform with those instructions. We also added some explanatory and/or clarifying language in the front (by drafting Recitals) in order to frame the Project and why two separate entities (at least present) joined in this joint financing effort.

    The red-line was done as separate document (since we had started the revision process at the time we received the limiting instructions yesterday), however, I believe we captured and identified all substantive changes from the original draft. We are still combing it on this end and will promptly point out any items we may have inadvertently missed. Also - while our client viewed an earlier version, they have not yet signed off on this iteration. I nonetheless wanted to get it to you since I believe everyone is anxious to bring this part to closure and put shoulders to the wheel on the financing phase.

I am in this afternoon, and am in the office Monday as well. Drop a note or give me a call when you are ready to discuss. I can be reached on my cell (below) during the weekend. Professional regards.

Curtis White
(202)537-2999 (v - direct)
(202)368-2058 (m) -----Original Message-----
From: Thomas J. Mancuso [mailto:tjmancuso@HSWMLAW.COM]
Sent: Thursday, August 17, 2006 2:07 PM
To: Curtis White
Subject: RE: Services Agreement
Thanks

---

From: Curtis White [mailto:cwhite@acg-cos.com]
Sent: Thursday, August 17, 2006 11:44 AM
To: Thomas J. Mancuso
Cc: Al Salazar; Harvey Bloch; Andrea Barbarin
Subject: RE: Services Agreement

Afternoon, TJ

We have a conference call scheduled for later this afternoon, and we will get our comments to you tomorrow mooring. . Regards.

Curtis White
(202)537-2999 (v - direct)
-----Original Message-----
From: Thomas J. Mancuso [mailto:tjmancuso@HSWMLAW.COM]
Sent: Thursday, August 17, 2006 1:58 PM
To: Curtis White
Cc: Al Salazar; Harvey Bloch
Subject: Services Agreement
Curtis:

Attached is the draft Financial Services Agreement. I understand that there was subsequently an agreement as to the fee amount (3%). It may be best if you provide me with comments, and we circulate drafts after you and I have talked.

Regards

TJ


Thomas J. Mancuso, Esq.
Hahn, Smith, Walsh & Mancuso, P.C.
717 17th Street
Suite 1520

Denver, Colorado 80202

Phone: (303) 298-0221
Fax: (303) 298-0904
Cell: (303) 246-0742
tjmancuso@hswmlaw.com

CONFIDENTIALITY NOTICE

This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain information that is confidential or legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving in any manner. Thank you.

As required by U.S. Treasury Regulations, we advise you that any tax advice contained in this communication (including any attachments) is not intended to be used for, and cannot be used for, the purpose of avoiding penalties under the United States federal tax laws.