UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

**THE MERIT GROUP, LLC,**                        08 CV 3496 (JES)

                Plaintiff,

                                                               **AFFIDAVIT IN SUPPORT**
   -against-                                        **OF MOTION TO REMAND**

**SINT MAARTEN INTERNATIONAL
TELECOMMUNICATIONS SERVICES, NV
and THE TELEM GROUP, NV,**

                Defendants.

------------------------------------------------------------------X

STATE OF NEW YORK   )
                           ss.:
COUNTY OF NEW YORK)

    Leonard N. Flamm, being duly sworn, deposes and says:

1. I am Counsel of Record for Plaintiff ("Merit" or "Plaintiff"), am fully familiar with the facts herein, and I make this affidavit in support of Plaintiff's motion to remand this action, pursuant to 28 USC 1447(c), back to the New York State Supreme Court, New York County, wherein this action was recently commenced.

**I. Introduction**

2. This is an action by Plaintiff, a financial services and consulting company located in New York, New York, to recover a consulting fee due to it pursuant to a Financial Services Agreement, dated August 31, 2006 (the "FSA"), entered into between it and the two non-resident Defendants which are telecommunications companies located in the Island Territory of Sint Maarten, Netherland Antilles. (The FSA is attached as Exh. "A" hereto.)

3. On April 10, 2008, the Defendants removed this action to this Court, pursuant to, *inter alia,* 28 USC 1441(d), on the claimed grounds that each was an "agency or instrumentality of a foreign state" under 28 USC 1603(a), whose shares were 100% owned by a foreign state, and, as such, the action was subject to automatic removal. Removal was also asserted by Defendants to be proper under 28 USC 1441(a).

4. Under 1441(d), the party seeking removal must qualify under 28 USC 1603(a) or (b) as a foreign state, a political subdivsion thereof, or as an agency or instrumentality of a foreign state.

5. Under 28 USC 1603(b)(2), a foreign state is defined to include an "agency or instrumentality of a foreign state" (a) if the agency/instrumentality is an "organ" of a foreign state or (b) if the agency/instrumentality's shares are majority (or more) owned by a foreign state or by a political subdivision thereof. Here, Defendants have claimed that they are "agencies or instrumentalities of a foreign state" solely because they are allegedly wholly owned by the Government of Sint Maarten. Defendants have not claimed, in the alternative, that they are "organs" of the Government of Sint Maarten. As shown herein, both claims, however, must fail.[1]

6. Defendants have also removed this suit on the basis of 28 USC 1441(a) as it involves the diversity of a citizen of one state and a foreign country entity. That provision requires, however, that the suit be one which could have been originally brought in the federal court to which removal is sought. As we discuss

---

[1] There does not appear to be any basis for a federal court to assume original jurisdiction of this suit by reason of any of the claims therein arising under any federal statute or raising other federal law or questions. See 28 USC 1441(b).

herein, the forum designation provision, on which the Defendants will likely rely to establish the *in personam* jurisdiction of this Court, facially refers only to a submission by the parties to the jurisdiction of the New York State Courts.

## II. Basis for State Court Jurisdiction

7. The FSA, on which this suit is based, was drafted and entered into in St. Maarten. The Defendants did not thereafter ever come to or meet in New York relative to the Plaintiff's performance under the FSA, and the Defendants have no place of business, office or other contacts with or in the State of New York.

8. Despite an absence by Defendants of any presence in, or contacts with, the State of New York, suit was nonetheless able to be brought by Plaintiff in the New York State Supreme Court because Paragraph 10 of the FSA provides, *inter alia*, that the parties thereto "hereby irrevocably submit to the jurisdiction of the courts of the State of New York" as the judicial forum for the resolution of any dispute arising out of the FSA.

9. The parties also designated, in Par. 10, that disputes arising under the FSA would be "governed by and construed in accordance with the laws of the State of New York, U.S.A."

## III. No Basis for Removal Based upon Failure of Defendants To Qualify Under 28 USC 1603(b)(2)

10. Plaintiff moves this Court to remand the action back to the State Court, pursuant to 28 USC 1447(c), because Defendants' purported removal on the basis of 28 USC 1441(d) was improper.

11. Although Defendants' have claimed to being wholly owned by the Government of the Island Territory of Sint Maarten (N.A.), this claim is, as shown

3

in the attached Limited Offering Memorandum ("LOM") (Exhibit "B" to the Affidavit of Harvey Bloch, President of Plaintiff), factually erroneous.  LOM at 1 and 29.  Defendants are <u>not</u>, in fact, directly owned by the Government of Sint Maarten itself, nor are they directly owned by a political subdivision thereof; rather, they are instead wholly owned by an intermediary holding company called "Sint Maarten Telecommunications Holding Company, N.V." ("Holding, N.V."), a non-political entity which, in turn, is wholly owned by the Government of Sint Maarten.[2]

12.  That distinction, seemingly minor, is critical as it effectively prevents either Defendant from claiming the status of being an "agency or instrumentality of a foreign state" on the basis of majority share ownership by the Government of Sint Maarten.

13.  Defendants' removal of this suit pursuant to 29 USC 1441(d) was thus improper because they do <u>not</u> fall within the definition of 28 USC 1603(a) as being either a "foreign state", or a "political subdivision" of a foreign state, or, under 1603(b)(2), as being an "agency or instrumentality of a foreign state" whose shares are majority (or more) owned by a foreign state.  Because Defendants have, in fact, been wholly owned by Holding, N.V since shortly after November 6, 2006, and because Holding N.V. is, in turn, owned by the Government of Sint Maarten, Defendants are, at most, "second-tier" non-political subsidiaries of a foreign state.

---

[2] To the extent the Complaint herein refers to the Defendants as being directly owned by the Government of Sint Maarten, it is incorrect and the Complaint should be deemed amended accordingly (alternatively, an Amended Complaint will be filed if the Court so advises).

14. As the U.S. Supreme Court made clear in Dole Food Co. v. Patrickson, 538 U.S. 468, 123 S.Ct. 1655 (2003), "a subsidiary of an instrumentality is not itself entitled to instrumentality status" under 28 USC 1603(b)(2), 538 U.S. at 473; and "only direct ownership of a majority of shares by the foreign state satisfies the statutory [1603(b)(2)] requirement." Id. at 474.

15. Thus, based upon the holding in Dole, if Entity "A" is majority-owned by another Entity "B", rather than directly by the foreign state, Entity "A" cannot itself be accorded foreign "agency" status; this is true even if Entity "B" is an "agency" or "organ" of the foreign state. See Filler v. Hanvit Bank, 378 F.3d 213 (2d Cir. 2004), cert. denied, 543 U.S. 1022 (a subsidiary of an "organ" of a foreign state is not itself entitled to foreign state immunity).

16. Here, the majority (actually, all) of shares of the two Defendants were, at the time this suit was commenced, owned by Holding N.V. and not by the Government of Sint Maarten itself. Thus, Defendants' second-tier or indirect ownership status by the Government does not allow them to qualify as "agencies or instrumentalities of a foreign state".

17. Although Defendants have thus far not claimed, in the alternative, that either of them is an "organ" of the Government of Sint Maarten, that claim, if hereinafter made, would fail as well since neither Defendant can meet any of the various criteria established by this Circuit to qualify as an "organ" of a foreign state under 28 USC 1603(b)(2).

18. The relevant factors to consider in deciding whether an entity has "organ" status are set forth in Filler v. Hanvit Bank, 378 F3d 213 at 217, and they were

applied and discussed at length in Murphy v. Korea Asset Management Corp., 421 F. Supp.2d 627 (SDNY 2005). Based upon the discussions in these cases, Defendants do not appear to meet any of the applicable criteria set forth therein as being necessary for qualification as an "organ" of a foreign state -- hence, Defendants correctly chose not to claim "organ" status as an alternate basis for removal.

19. Even if Defendants were now to attempt to claim such status, it would fail because of their inability to meet any of the applicable criteria: As shown in the accompanying Affidavit of Harvey M. Bloch, a principal of Plaintiff: (1) The Defendants were not created for any national or governmental purpose, but rather they were created for the purpose of commercially exploiting cable internet and phone service programming and for operating and providing related telecommunication services in Sint Maarten itself and elsewhere; (2) Defendants are not supervised by the Government of Sint Maarten, but rather by Holding N.V. and perhaps indirectly by a Supervisory Board; that supervision is at most only nominal, not actual; (3) Defendants are not required to hire public employees; *i.e.*, the salaries of their respective employees are not paid for by the Government of Sint Maarten or from public funds; (4) Defendants hold no exclusive rights in Sint Maarten; they hold, at most, certain non-exclusive licenses granted to them by various federal agencies and private companies of, *inter alia,* the United States; and (5) Defendants are not treated as governmental organs under the laws of Sint Maarten (in terms of having any tax exemptions, immunity from suit, etc.). See Murphy, 421 F.Supp.2d 627 at 642-645.

20. In sum, and as shown in the Bloch Affidavit, the Defendants are profit-making entities who seek to commercially exploit the desire of the general population of Sint Maarten and other territories for cable, internet and phone services and programming. The Government of Sint Maarten does not supervise either Defendant, and the Defendants perform no regulatory, public good or oversight functions. These factors, amongst others, militate against their claiming status as "organs" of the Government of Sint Maarten.

21. Finally, Defendant Telem appears not to be a separate legal entity, but rather a joint venture of three (3) other entities, as that term is used in 28 USC 1603(b)(1). See page 2 of Defendants" Notice of Removal, dated April 10, 2008. Accordingly, Telem also fails to qualify as an "agency or instrumentality of a foreign state" under 28 USC 1603(b)(1).

### IV. No Basis for Removal Based upon the Forum Designation Language in the FSA

22. Because Defendants fail to qualify for removal under 28 USC 1441(d), they may seek to fall back on the general removal provision of 28 USC 1441(a). This attempt must fail as well because, as a condition thereto, they are unable to show that this Court would have had personal jurisdiction over them if this suit had been originally brought against them in this Court. Brown v. Francis, 75 F.3d 860 (3rd Cir 1996).

23. Under 28 USC 1441(a), removal is not automatic merely because there exists diversity of citizenship of the parties thereby giving the federal court subject matter jurisdiction. As a further requirement for removal, Defendants

must also show that they would have been subject to the *in personam* jurisdiction of this Court if Merit had originally sought to sue them here.

24.  At bar, such jurisdiction was, however, doubtful at best because Defendants had no presence in, or contacts of any kind with, the State of New York.  Thus, the only way any court located in the State of New York -- be it State, federal or otherwise -- could have acquired *in personam* jurisdiction over them would be through the forum designation provision in Paragraph 10 of the FSA.

25.  But that provision, although it was clearly adequate to effect *in personam* jurisdiction over the Defendants in New York State Supreme Court, was not broad enough, in wording, clarity and/or intent, to effect personal jurisdiction over the Defendants in this federal court located in the State of New York:

26.  On its face, Paragraph 10 applies only to a submission by the parties thereto to the courts "of" the State of New York.  The fair and ordinary meaning of these words is to confer exclusive jurisdiction on courts which are part of the court system of the State of New York.  This Court, simply put, is not such a court; rather, it is a court "of" the U.S., which happens to be located in the State of New York.

27. This is not a hyper-technical point:  There are substantial differences between a court in the State, which could include a federal court located herein, and a court of the State, which could not include a federal court.  Although the word "of" may have more than one meaning, depending upon its context, it

8

should not be automatically presumed, from this ambiguity in meaning, that the parties necessarily intended to use the word "in" when in fact they used "of".

28. While there is nothing on the face of the FSA to infer that the parties wanted to have a <u>federal</u> court located somewhere <u>in</u> New York hear a dispute arising under the FSA, there are ample bases from the language and negotiation context of the FSA to support the opposite conclusion:

29. First, the Affidavit of Harvey M. Bloch shows the parties to the FSA specifically intended, in their negotiations, to exclude the federal courts (see discussion in Par. 41, *infra*).

30. Second in a separate choice of law provision in the FSA, the parties further agreed that the laws of New York would apply to govern the resolution of any dispute. That provision, when read in tandem with the FSA's forum designation provision, suggests that a federal court in New York was not likely intended by the parties to be an alternate forum to hear any disputes arising thereunder.

31. The Bloch Affidavit discusses the reasons why Plaintiff wanted all of the laws of the State of New York to apply, not just those which a federal court would apply sitting in a diversity of citizenship case.

32. Although Merit acknowledges that this Court, if it assumed jurisdiction herein based on 28 USC 1332(a)(2), would generally apply the substantive laws of New York to the dispute, that application would not necessarily be to the same extent as if it were a court of New York State: Federal courts sitting in diversity cases do not exclusively apply the substantive laws of the state which they are

required to apply; they also apply, *inter alia,* the Federal Rules of Civil Procedure and the Federal Rules of Evidence -- which are <u>not</u> a part of the "laws of the State of New York" (or of any other state).

33.  Because this Court, if it hears the case, will not necessarily apply <u>all</u> of the laws of the State of New York to this case, and because that non-exclusive application is contrary to what the parties contemplated when they negotiated their choice of law provision, this provides a further reason to construe the forum designation provision as to not encompass a federal court sitting in New York.

34.  Third, the forum designation provision at bar could be construed to constitute a waiver of the right to remove this case away from state court.  In requiring the parties to "irrevocably submit" to the courts <u>of</u> the State of New York, this provision appears to strip away the element of choice among multiple available courts.  If the forum designation provision were read to cover any court "in" New York, a magistrate, city, religious, or other non-New York <u>State</u> court, as long as it was physically located in New York, could theoretically qualify to adjudicate this dispute.  Because this is a result that was certainly <u>not</u> intended by the parties, this Court should be reluctant to construe the forum designation clause in a way that would allow for this result.

35.  The Second Circuit case of <u>Proyecfin de Venezuela v. Banco Industrial de Venezuela</u>, 760 F2d 390 (2d Cir. 1985), is supportive of Plaintiff's position at bar: In that case, the forum designation provision of the subject contract was far broader than that at bar:  It stated that suit could be brought in several forums, including either the "Courts of the State of New York" <u>or</u> the "Courts of the United

10

States of America in New York".  Not only did the parties to the contract in Proyecfin designate the New York State courts in the exact same way as did the parties at bar, *i.e.*, as being a "court of the State of New York", but the Proyecfin contract also accorded the Federal Court sitting in New York its own separate definition.  Even with this broader and less ambiguous language, the Second Circuit noted that the party opposing the removal had still "argue[d] forcefully" that the forum selection provision therein constituted an express waiver of the right to remove.  *Id* at 396.  (The Second Circuit did not decide in favor of a remand only because 28 USC 1441(d) was found to apply in that case.)  Based on Proyecfin, the more narrow and more ambiguous language at bar should, *a fortiori*, be construed to apply only to New York's State courts.

36.  Defendants' attempt to rely on the forum designation provision of Par 10 of the FSA, as providing a basis for conferring personal jurisdiction over them by this Court,  faces other problems:

37.  As previously noted, Par. 10 does not facially constitute an unambiguous consent by the Defendants to the personal jurisdiction of this Court.  Such consent is, at best, only arguable from the circumstances.  The very fact that there is only an arguable basis for the assertion of personal jurisdiction by this Court means that the issue is not free from doubt.  Thus, if Merit had started this suit in this Court, rather than in State Court, it could have faced a motion to dismiss by the Defendants based upon the same claim that this Court lacked personal jurisdiction over the Defendants.  Plaintiff would have been in the same position as Defendants are now in; *i.e.*, having to argue that the forum

designation clause constituted an ample consent to personal jurisdiction by this Court.

38. The principal point to be made is that, even in a light most favorable to Defendants, there exists an ambiguity in Par. 10 of the FSA. In such circumstances, it is the province of this Court to either decline removal *ab initio*, because the issue is in sufficient doubt, or else to resolve the ambiguity to the extent of holding against the draftsmen of Par 10 of FSA which contains the ambiguous wording.

39. In City of New York v. Pullman, 477 F. Supp. 438 (SDNY 1979), the Court was asked to construe the phrase "to the New York Courts only". Finding that, ultimately, it was ambiguous, the Court therein held that such ambiguity had to be resolved against the drafter of the ambiguous language. *See also* Stern v. Satra, 39 F.3d 1305 (2d Cir. 1976), and Cronin v. Family Education Co., 105 F.Supp.2d 136 (EDNY 2000), cases in which similar ambiguous wording was resolved against the draftsmen.

40. Here, as shown in the Affidavit of Harvey Bloch (see pars. 31-33), the Defendants and their counsel were the draftsmen of the forum selection provision in the FSA. Because of that, any ambiguity in the forum designation provision should be resolved against the Defendants.

41. Lastly, as noted above and in the Bloch Affidavit, it was the mutual desire of both sides, during the FSA negotiations in August 2006, that the forum designation provision not apply to a federal court located in New York: Plaintiff, for its part, did not want a federal court to hear any consulting fee dispute

because of the serious risk of losing its right to a trial by jury because the Defendants, who were <u>then</u> 100% directly-owned agencies of a foreign sovereign, would be able to remove to federal court pursuant to 28 USC 1441(d). Merit also wanted the favorable substantive law of New York to apply, without the uncertainties of federal procedural law.

42. Defendants, who had potential deposition and trial witnesses located throughout the Caribbean, were interested in having what they perceived as the greater flexibility and relaxed compliance requirements of the State Court, including for discovery and trial scheduling. Thus, the parties intended for Paragraph 10 to apply only to New York State Courts.

43. Accordingly, it would run counter to the original intentions of both sides to the FSA for this Court to find, merely because the Defendants have now changed their minds, that the forum designation provision therein applies to this federal court.

## V. <u>Conclusion</u>

44. If the right to remove is in any respect deemed doubtful, as it appears to be at bar, case law counsels that those doubts must be resolved in favor of the remand to State Court. See <u>Lowe v. Trans World Airlines</u>, 396 F. Supp. 9 (SDNY 1975); <u>Lance International, Inc. v. Aetna Casualty & Surety Co</u>., 264 F.Supp. 349 (DCNY 1967); and <u>Jody Fair, Inc. v. Dubinsky</u>, 225 F.Supp. 695 at 696 (SDNY 1964).

45. Based upon all of the foregoing reasons, this action should be remanded back to the New York State Supreme Court, New York County, pursuant to 28 USC 1447.

**WHEREFORE,** it is respectfully requested that Plaintiff's motion to remand be granted in all respects, with appropriate costs.

                                                                /s/ Leonard N. Flamm
                                                                   Leonard N. Flamm

Sworn to before me this
7th day of May, 2008

/s/ B. Jill Schwartz
     Notary Public
New York County
License No. 31-4736059
Exp. 8/31/09

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                              : SS:
COUNTY OF NEW YORK)

      JILL SCHWARTZ, being duly sworn, deposes and says:

      I am not a party to the action, am over 18 years of age and reside in Red Bank, New Jersey 07701.

      On May 7, 2008, I served the within Notice of Motion to Remand, Affidavit of Harvey M. Bloch, Affidavit of Leonard N. Flamm, and Exhibits thereto, by depositing true copies thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, addressed to the following attorneys for Defendants at the address set forth thereafter:

      David B. Goldstein, Esq.
      RABINOWITZ, BOUDIN, STANDARD,
      KRINSKY & LIEBERMAN, P.C.
      111 Broadway (11th Fl.)
      New York, New York  10006

                                                                                                      /s/ Jill Schwartz
                                                                                                        Jill Schwartz

Sworn to before me this
7th day of May, 2008

  /s/ Leonard N. Flamm
        Notary Public
New York County
License No. 31-6326433
Exp. 11/30/2010